IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-CR-121-RAW |
| ) | |
| JERRY LANA FREEMAN, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Client Transfer to New Facility or For Client to be Brought to Marshal's Holdover for Attorney Client Visits [Docket No. 57]. On September 16, 2024, Defendant entered a plea of guilty to the crime of drug conspiracy and is currently awaiting sentencing. Docket Nos. 24 & 43. He is being held at the Cimarron Correctional Facility in Cushing, Oklahoma ("Cimarron"). The United States Marshal Service ("USMS") utilizes Cimarron for the temporary housing of federal prisoners.[1]

Defendant has been represented by Jason Perkins throughout this case. Mr. Perkins attempted to visit his client on October 17, 2024, November 13, 2024, and November 26,

---

[1] Cimarron is operated by Core Civic, a private company. In his motion Defendant appears to challenge the status of Cimarron's ability to house federal detainees noting that President Biden signed an executive order eliminating the usage of privately operated prisons. Docket No. 57, p. 4. Relatedly, Defendant also contends that the canines at Cimarron are insufficiently trained in identifying electronic devices. *Id.* at 8. The Court declines to address either of these issues as they appear to be beyond the scope of whether Defendant's conditions of confinement impair his Sixth Amendment Rights.

2024, and on each occasion, he was denied entry. Docket No. 57, p. 2. On October 17, 2024, Cimarron officials requested to search Mr. Perkins vehicle. *Id.* He refused to permit a search of his vehicle and was consequently denied entry. *Id.* at 2.

On November 13, 2024, to bypass a search of his vehicle, Mr. Perkins had another individual drive him to Cimarron where he was dropped off as the vehicle left the premises. *Id.* Again, Cimarron officials stated their intent to search the vehicle. *Id.* Mr. Perkins refused to permit a search of the vehicle and was denied entry. *Id.*

Finally, on November 26th, 2024, Mr. Perkins was dropped off outside of the premises of Cimarron and proceeded to walk to the facility. *Id.* at 3. Upon entering the facility, Mr. Perkins was subjected to a canine search and was denied entry. *Id.* Mr. Perkins cleared the search and does not know why he was not permitted to see his client at this visit. *Id.* Defendant does not indicate the time of this visit, but only states that it felt as though he was being singled out. *Id.* Defendant moves to be transferred to another facility or transported to the U.S. Marshal's holdover cells in the federal courthouse in Muskogee, Oklahoma. For the reasons set forth herein, the Court finds that the motion is DENIED.

## ANALYSIS

Defendant maintains that he should be transferred to a different facility because Cimarron officials are interfering with his Sixth Amendment right to counsel by requiring Mr. Perkins to undergo "warrantless and 'reasonable suspicion' free search[es]" prior to

being permitted entry to Cimarron.² Docket No. 57. In response, the Government maintains that the USMS has broad authority and discretion with regard to the housing of prisoners, and it is routine practice for jail staff to search a visitor's person and vehicle prior to their entry into a facility.

Pursuant to 18 U.S.C. § 4086 the United States Marshals are required to "provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution." 18 U.S.C. § 4086; 18 U.S.C. § 4086; 28 C.F.R. § 0.111(k) ("The Director of the United States Marshals Service shall direct and supervise . . . [s]ustention of custody of Federal prisoners from the time of their arrest by a marshal or their remand to a marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of sentence[.]"). The USMS is empowered with "broad authority to determine where to house its prisoners." *United States v. Espinoza-Arevalo*, 2015 WL 9598299, at *3 (W.D. Mo. Dec. 30, 2015) (citing *Saunders v. United States*, 503 F. Supp. 2d 493, 496 (E.D. Va. 2007)).

Nonetheless, the Sixth Amendment provides for the right to assistance of counsel in all criminal prosecutions. U.S. Const. amend VI. ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). As such, "regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier*

---

² "The general rule is that a defendant must file a separate civil action to address his conditions of confinement. . . . The primary exception to this general rule applies when a condition of confinement interferes with a pretrial detainee's access to counsel in a criminal case." *United States v. Folse*, 2016 WL 3996386, at *15-16 (D.N.M. June 15, 2016).

*v. Martinez*, 416 U.S. 396, 419 (1974) overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989).

Cimarron's regulations and practices have not unjustifiably obstructed Defendant's access to counsel in this matter. Particularly, as it pertains to Mr. Perkins first two visits, Cimarron had a special governmental need such that it could search Mr. Perkin's vehicle without probable cause or reasonable suspicion. The Supreme Court has explained that "neither a warrant nor probable cause, nor indeed any measure of individualized suspicion, is an indispensable component of [Fourth Amendment] reasonableness in every circumstance." *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 665 (1989). One such instance where neither a warrant nor probable cause is required to conduct a search is when "special needs" make such a requirement impracticable. *Romo v. Champion*, 46 F.3d 1013, 1016 (10th Cir. 1995). The constitutionality of a "special needs" search under the Fourth Amendment is evaluated through a balancing test of the government's needs and the individual's privacy interest. *Id.* at 1017.

In this regard, the facts of the present case are analogous to those presented in *Romo*. In *Romo*, Mr. Romo's vehicle was stopped and searched at a roadblock outside of an Oklahoma prison. *Id.* at 1015. Mr. Romo and the passenger were required to open the doors and trunk of the car and were subjected to a canine sniff of their vehicle and bodies. *Id.* Mr. Romo subsequently brought suit alleging that his Fourth Amendment right to be free from unreasonable searches and seizures was violated. *Id.* The Tenth Circuit conducted a balancing test and found that although "persons visiting a prison possess a legitimate expectation of privacy," such expectations were outweighed by the facility's "special need"

in prison security and efforts to prevent the entry of contraband. *Id.* at 1010 (internal citations and quotations omitted).

Analogously, Defendant challenges Cimarron's policy of requiring a brief detention and search of visitor's vehicles as a condition to entering its premises. As in *Romo*, Cimarron has a special need in maintaining the security of its facility such that prison visitors have a reduced expectation of privacy. *Id.* at 1010; *see Neumeyer v. Beard*, 421 F.3d 210 (3d Cir. 2005) ("[C]onsidering the relatively minor inconvenience of the searches, balanced against the [Prison] officials' special need to maintain the security and safety of the prison that rises beyond their general need to enforce the law, the prison officials' practice of engaging in suspicionless searches of prison visitors' vehicles is valid under the special needs doctrine."). Moreover, Cimarron's actions and policies comport with the federal regulations that govern the Bureau of Prisons. 28 C.F.R. § 511.13 (noting that staff may search belonging before entering, or while inside the facility, to keep out contraband); 28 C.F.R. § 511.15 (Non-inmates "belongings may be search, either randomly or based on reasonable suspicion, before entering, or while inside a Bureau facility or Bureau grounds . . . Non-inmates will be given the option of either consenting to random searches as a condition of entry, or refusing such searches and leaving Bureau grounds."). Thus, Cimarron's policy and practice to conduct "warrantless and reasonable suspicion free search[es]" of visitors and deny entry to those who do not consent to a search, does not *unjustifiably* obstruct Defendant's right to professional representation.[3]

---

[3] Defendant cites *Boren v. Deland*, 958 F.2d 978, 988 (10th Cir. 1992) for the contention that "prison visitors do not abandon their constitutional rights when they enter a penitentiary" and only

Lastly, although Mr. Perkins does not know why he was denied entry on his third visit, Defendant fails to show that this refusal of entry was unconstitutional, unjustified, or would happen again in the future. Defendant provided the Court with limited information regarding this third visit, and although the Government likely could have and should have filled in the gaps, Defendant "has the burden of showing the real possibility of interference, not just inconvenience." *Folse*, 2016 WL 3996386, at *23.  Additionally, Defendant has not explained why Mr. Perkins is unable to meet with his client via remote means (either telephonically or through videoconference), nor has Defendant explained why Mr. Perkins would be denied entry into Cimarron on subsequent visits if he were to enter the premises on foot, should he continue to refuse to consent to a search of his vehicle. Here, there remains adequate methods by which Mr. Perkins could meet with his client. Thus, Cimarron has not unjustifiably interfered with Defendant's right to counsel as any interference that occurred was justified based on the facility's security needs. *See generally Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). Therefore, the Court declines to impinge upon the broad authority of the USMS

---

searches supported by reasonable suspicion are constitutionally permissible. Notably, the search at issue in *Boren* was a strip search of a visitor, and the Tenth Circuit, in *Romo*, explicitly noted "[a] strip search is a far cry from the routine, rather nonintrusive search initially conducted by defendants at the roadblock. . . . Requiring reasonable suspicion for strip searches of prison visitors is not inconsistent with our holding today that the routine preliminary search of plaintiffs and their vehicle, although executed without individualized suspicion was reasonable." *Romo*, 46 F.3d at 1019. Likewise, *Boren* is inapposite in this case as a routine preliminary search of Mr. Perkin's vehicle, although executed without reasonable suspicion, is a far cry from a strip search.

by ordering that Defendant be transferred to a different facility or a holdover cell. *See United States v. Folse*, 2016 WL 3996386, at *14-19 (D.N.M. June 15, 2016) (denying defendant's motion to transfer because prison's laptop restrictions did not violate his right to counsel).

## CONCLUSION

Accordingly, based on the foregoing, IT IS ORDERED that Defendant' Motion for Client Transfer to New Facility or For Client to be Brought to Marshal's Holdover for Attorney Client Visits [Docket No. 57] is DENIED.

IT IS SO ORDERED this 14th day of January 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**